### In re Guardianship of George Leighton DAHL.

#### No. 9040.

Court of Civil Appeals of Texas, Amarillo.

Oct. 31, 1979.

Rehearing Denied Dec. 5, 1979.

Vial, Hamilton, Koch, Tubb, Knox & Stradley, Robert G. Vial, M. Leigh Bartlett, Gerald R. Powell and Stephen L. Baskind, Dallas, for appellant.

Bickel & Case, Thomas L. Case, Dallas, for appellee.

REYNOLDS, Chief Justice.

In this guardianship contest, the trial court, accepting the jury verdict finding that contestant-appellee George Leighton Dahl is not of unsound mind, rendered judgment decreeing, *inter alia*, that Mr. Dahl is a man of sound mind and that applicant-appellant Gloria Dahl Akin's application for permanent guardianship is in all things denied. Mrs. Akin's twelve-points-of-error appeal seeking to reverse the judgment justifies only a reformation of the judgment to conform to the verdict. Reformed and affirmed.

On 28 March 1978, Gloria Dahl Akin filed her *ex parte* application for her immediate appointment as temporary guardian of the person and estate of her eighty-three year old father, George Leighton Dahl. She alleged that Mr. Dahl "is not mentally competent to attend to his person or to his business affairs," and the pressing matters affecting the personal estate of Mr. Dahl make necessary the immediate appointment of a temporary guardian. She further alleged that her appointment should be continued for as long as the court deems necessary or be made permanent.

An order appointing, and enumerating the powers of, Mrs. Akin as temporary guardian was signed 20 April 1978. Approximately one week later, Mr. Dahl entered his answer and contest to the temporary guardianship application, simultaneously demanding a jury trial. Both parties then moved for, and vigorously opposed the other's efforts to effect, extensive discovery and production of records and documents. These efforts, as well as motions concerning the payment of costs, expenses, attorneys' fees and the association and disqualification of counsel, evoked numerous orders by the trial court up to the date of trial.

The trial setting of 15 May 1978 was vacated upon the granting of Mrs. Akin's motion for continuance, and the trial was reset for 30 May 1978. Mr. Dahl moved for, and was denied a termination of the temporary guardianship or grant of an instant trial and a limit on discovery. On 22 May 1978, Mrs. Akin amended her application, specifically alleging a need to appoint a permanent guardian of both the person and estate of Mr. Dahl upon the ground that he "is not mentally competent or physically able to attend to his personal affairs or business affairs." The next day, Mr. Dahl answered, and thereafter amended his answer, contesting the application, and the issue of a permanent guardianship was joined.

Four days before trial date, Mrs. Akin filed her second motion for continuance. The motion was overruled and the case proceeded to trial before a jury. After a nine-day trial during which the jury heard deposition and live testimony included in the more than 2,000-page statement of facts and viewed 124 exhibits, the court submitted one special issue, accompanied by a definition, to the jury. The submission and the answer of the jury are shown in the record thusly:

> Do you find from a preponderance of the evidence that George Leighton Dahl is of unsound mind?

ANSWER: He is

or

He is not

ANSWER: He is not

*Definition* : Persons of unsound mind are persons non compos mentis, idiots, lunatics, insane persons, and other persons who are mentally incompetent to care for themselves or to manage their property and financial affairs.

The court accepted the verdict and, receiving Mr. Dahl's motion for judgment on the verdict and Mrs. Akin's motion for judgment non obstante veredicto, rendered judgment on the verdict. The 12 June 1978 judgment decreed, insofar as material to the appellate issues, that:

1. George Leighton Dahl is a man of sound mind.

2. The temporary guardianship be, and the same is hereby, in all things dissolved, set aside and terminated on this day, and the Application for Permanent Guardianship is in all things denied.

After Mrs. Akin's amended motion for new trial was overruled, she perfected this appeal from the judgment.

First noticed is Mrs. Akin's point that the court abused its discretion in overruling her second motion for continuance. The predicate for Mrs. Akin's motion was that: (1) she did not have time to prepare her case for trial because of the complexity of the issues, the volumes of documents and plethora of witnesses involved, and the late entry into this suit by the firm of Vial, Hamilton, Koch, Tubb, Knox & Stradley, who joined her original counsel, James Hartnett of the firm of Turner, Hitchins, McInerney, Webb & Hartnett, with leave of the trial court on 17 May 1978; (2) she was delayed and prejudiced in her preparation of the cause for trial because Dahl refused to comply with a court order to produce copies of various checks and transcriptions of telephone conversations made by Dahl, by the accelerated program of discovery and necessity of court hearings to force Dahl to comply with court orders, by the inability of the court to rule on important motions, and particularly a motion to compel a witness to answer certified questions during a deposition, due to the shortness of time, and because Dahl filed a suit in Federal district court to restrain her from prosecuting the present suit; and (3) discovery was not complete in that further depositions were scheduled and Dahl had not produced all documentary evidence in his possession.

■ All of the matters alleged to warrant a continuance call for discretionary determinations by the trial judge. The parties recognize that the granting or refusing of a motion for continuance is within the sound discretion of the trial court. *Hernandez v. Heldenfels,* 374 S.W.2d 196, 202 (Tex. 1964). The court's decision is subject to review on appeal, *American Bankers Insurance Company v. Fish,* 412 S.W.2d 723, 725 (Tex.Civ.App.—Amarillo. 1967, no writ), but it will be reversed only upon a showing of abuse of discretion. *Celanese Coating Co., Devoe Paint Div. v. Soliz,* 541 S.W.2d 243, 249 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.).

■ The primary thrust of the point is that associated counsel, Robert G. Vial, had insufficient amount of time to adequately and properly prepare Mrs. Akin's case for trial. Cited is *Leija v. Concha,* 39 S.W.2d 948 (Tex.Civ.App.—El Paso 1931, no writ), and *Moran v. Midland Farms Co.,* 282 S.W. 608 (Tex.Civ.App.—El Paso 1926, no writ), for the principle that it is error to deny a continuance when a party is unable to prepare for trial because substitute counsel is employed at such a late date that he is given inadequate time, or the trial is set at an unreasonably early date.

Granting the soundness of the principle, neither *Leija* nor *Moran* depicts the situation before us for review. In *Leija,* counsel of record withdrew the day before trial and substitute counsel was forced to trial thirty minutes after employment. *Moran* concerned the situation where counsel of record was called upon to meet and defend at a final hearing new issues which had been tendered only twenty-four hours earlier.

Here, while counsellor Vial did not officially enter the case until thirteen days before trial date, Mrs. Akin's counsel from the inception of the litigation remained in the case. Although Mrs. Akin makes the general, conclusory allegation that the court's denial of a continuance greatly prejudiced her in that there was insufficient time to prepare her case for trial, significantly there is no specification of any preparation that otherwise might have been made. There is no suggestion that Mrs. Akin's original and remaining counsel was not fully competent to represent her interests; no attempt is made to designate any material fact which could have been, but was not, developed due to time limitation; and no suggestion of any particular deficiency in the presentation of her case is advanced. Absent a strong and specific showing of what preparation for trial might have been made but for the court's denial of a continuance, no abuse of discretion is shown. *McAx Sign Co., Inc. v. Royal Coach, Inc.*, 547 S.W.2d 368, 370 (Tex.Civ. App.—Dallas 1977, no writ).

Moreover, it should be noted that the instruments and documents alluded to in Mrs. Akin's motion were, almost from the moment the proceedings entered the adversary stage, the subjects of extensive discovery actions vigorously pursued. The court made many rulings on motions regarding discovery, and there is no contention of inaction on any motion. Considering the court's involvement, and its recognition that the sensitive nature of the suit necessitated its prompt disposition, the court was in the best position to determine whether discovery was reasonably complete and the case ready for trial. Without some positive showing otherwise, we are not prepared to say that the mere retention of co-counsel thirteen days before trial, coupled with a conclusory allegation of insufficient time to prepare for trial, shows an abuse of discretion in overruling a second motion for continuance. The eighth point of error is overruled.

During the course of the trial, the propriety of an entry into and the removal of some papers from Mr. Dahl's apartment was questioned. There was testimony that the entry and removal of papers were sanctioned by a court order; however, Mrs. Akin, to rebut the suggested impropriety, tendered as evidence certain court documents relating to the temporary guardianship of the person and estate of Mr. Dahl. The documents were the court's order authorizing her to take possession of Mr. Dahl's apartment, the probate clerk's certification that Mrs. Akin was issued Letters of Temporary Guardianship, and the order of the court appointing Mrs. Akin temporary guardian. The clerk's certificate showed the guardianship was for the person and estate of "George Leighton Dahl, Incompetent," and the two orders were styled "IN RE: GUARDIANSHIP OF GEORGE LEIGHTON DAHL, INCOMPETENT." Mr. Dahl had no objection to the admission of the documents provided the court gave an appropriate instruction. The court admitted the documents and, over Mrs. Akin's objections, informed the jury that:

> You are hereby instructed that the style of the Cause No. 78–994–P/2 and the orders of April 20th, being Exhibit 111 and the order of April 27, 1978, being Exhibit A–109, and the certification by the County Clerk being A–110, hereby admitted into evidence, do not presume nor infer that George Leighton Dahl has been found incompetent.

Although Mrs. Akin states the court should not have commented on the evidence at all, the one objection she made known to the trial court and followed on appeal is that the instruction amounted to a comment on the weight of the evidence.

■ Undoubtedly, the court was empowered to instruct the jury in regard to the evidence. The documents were offered for the special purpose of rebutting any question of impropriety on the part of Mrs. Akin in the entry and removal of papers from Mr. Dahl's apartment. They were not offered as evidence of the main issue—*i. e.*, Mr. Dahl's mental state; indeed, the documents were not admissible for that purpose, for they in no manner represented a prior adjudication of incompetency. *Houston*

*Bank & Trust Company v. Lee*, 345 S.W.2d 320, 324 (Tex.Civ.App.—Houston 1961, no writ). Yet, in each document Mr. Dahl was labeled as "incompetent." These circumstances authorized the trial court, in admitting the evidence for one purpose, to instruct against the prejudicial effect of the evidence being considered for another purpose. *See Dallas Ry. & Terminal Co. v. Whitcomb*, 139 Tex. 467, 163 S.W.2d 616, 617 (1942). Thus, the evidence having been introduced and admitted for a special purpose which was not competent upon the main issue, the court had the duty to confine its consideration to the particular, relevant issue, *Fambrough v. Wagley*, 140 Tex. 577, 169 S.W.2d 478, 480 (1943), or to give an instruction that would prevent the drawing of improper inferences from the evidence. *Jordan v. Walker*, 448 S.W.2d 837, 840 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n. r. e.).

■ Hence, reached is the query: does the instruction given amount to a comment on the weight of the evidence? In this connection, Mrs. Akin submits that the instruction "suggested to the jury an *apparent* [as opposed to an existing] opinion of the court that Dahl was competent (emphasis added)." The subtle distinction stated is not explained and, in the same manner, it is not explored; for, whether the adjective "apparent" is meant in its sense of being evident, clear or manifest to the understanding, or in the sense of an illusory appearance that may or may not be borne out by more rigorous examination or greater knowledge, the instruction is susceptible to the vice ascribed only if its wording indicates the verity or accuracy of the fact to be determined. *See McDonald Trans., Inc. v. Moore*, 565 S.W.2d 43, 45 (Tex.1978).

Viewed in the light of the controlling principle, the instruction is not chargeable

with being a comment on the weight of the evidence. Far from indicating an opinion by the court that Mr. Dahl was competent, the wording of the instruction does not indicate any opinion, either on that issue or any other inquiry about Mr. Dahl's mental state. The language does no more than correctly advise the jury that the documents do not represent a prior adjudication that Mr. Dahl is incompetent. The ninth point is overruled.

To secure the appointment of a guardian for Mr. Dahl under her pleadings that he is not mentally competent, Mrs. Akin was statutorily required to prove that Mr. Dahl was "a person of unsound mind." Tex. Prob.Code Ann. § 114(a) (Vernon 1956).[1] Persons of unsound mind are defined in the Code to be "persons non compos mentis, idiots, lunatics, insane persons, and other persons who are mentally incompetent to care for themselves or to manage their property and financial affairs." Tex.Prob. Code Ann. § 3(y) (Vernon 1956).[2] This Code definition was quoted in company with the special issue, as recorded in the forepart of this opinion, when the court charged the jury. The submission of the definition was objected to by Mrs. Akin, and next considered is whether the submission, tested by the objections viable on appeal, is shown to be reversible error.

■ On appeal, however, Mrs. Akin asserts, among other contentions, that: (1) the definition placed a greater burden of proof on her than required by law; (2) to the extent the definition placed an undue burden of proof on her, the definition is also a misstatement of the law; and (3) the definition encompassed matters not raised by the pleadings and the evidence. None of these objections was voiced to the trial court and, considering the objections actual-

---

1. This section provides that before the appointment of a guardian for a person, there must be a finding that the person "is either a minor, a person of unsound mind, an habitual drunkard, or a person for whom it is necessary to have a guardian appointed to receive funds due such person from any governmental source."

2. Similarly, "incompetents" or "incompetent persons" carry the Texas Probate Code definition of "persons non compos mentis, idiots, lunatics, insane persons, common or habitual drunkards, and other persons who are mentally incompetent to care for themselves or to manage their property and financial affairs. Tex. Prob.Code Ann. § 3(p) (Vernon 1956).

ly made, the court had no inkling of, nor the opportunity to pass on, the objections asserted for the first time on appeal. Because these objections were not specifically included in the objections made to the court's charge before its submission to the jury, they, by force of Tex.R.Civ.P. 274, "shall be deemed waived." *Larson v. Ellison*, 147 Tex. 465, 217 S.W.2d 420, 421 (1949).

■ Despite the waiver of the objections themselves, the central argumentative aspects of them are inseparable from the deliberation called for by the objections which were expressed to the trial court and pursued on appeal. These objections are, briefly, that the definition tended to confuse and mislead the jury and constituted a comment on the weight of the evidence. All of the objections center around the contention that the listing of "persons non compos mentis, idiots, lunatics, [and] insane persons" should have been excluded from the definition. Ultimately, the test of the contention is not whether the definition is imperfect when measured by the circumstances of this cause, but whether the definition itself was, as Mrs. Akin urges, reasonably calculated to cause and probably did cause the rendition of an improper judgment. Tex.R.Civ.P. 434.

In drafting the provisions of the Probate Code, the legislature employed the phrase "unsound mind" as a generic term for conditions of mental aberration or derangement, and then expressed its comprehension of the term by classifying the persons who would be included. Thus, for guardianships authorized for persons of unsound mind, the phrase "persons of unsound mind" carries its particular statutory definition.

Procedurally, when a case is submitted to the jury, the court is required to submit such definitions as shall be proper to enable the jury to render a verdict, notwithstanding that a given definition incidentally constitutes a comment on the weight of the evidence. Tex.R.Civ.P. 277. Respectable authority has declared that if a statutory term is properly used in a special issue submitted, then, it being a legal term, it is the duty of the court to give a definition and, there being the statutory definition, the court could give no other. *Liberty Mut. Ins. Co. v. Boggs*, 66 S.W.2d 787, 795 (Tex. Civ.App.—Eastland 1933, writ dism'd).

The definition given here, and objected to, is the definition declared in the law itself and, within the purview of Tex.R. Civ.P. 277, was given to set out the meaning of the statutory phrase required to be used in the special issue. Under the theory of the objections, reversible error appeared when the definition included classifications of unsound mind which were not in the case, either by pleading or any evidence. Cited in support of this theory are authorities recognizing the general rule that while a definition may be correct as an abstract statement of the law, it may be too broad if applied to a particular case.

Yet, the general rule is said to be inapplicable to demonstrate reversible error where the definition is statutory. The meaning of a legal phrase is not different in different cases. It may be that, because of the nature of the evidence, the failure to give all of a statutory definition is not erroneous; but, it does not follow that it would be reversible error to give the definition prescribed by law. The *National Mut. Casualty Co. v. Lowery*, 135 S.W.2d 1044, 1049 (Tex.Civ.App.—Eastland 1940), *aff'd*, 136 Tex. 188, 148 S.W.2d 1089 (1940).

Still, reversible error would occur under Mrs. Akin's objections, if, as she contends, the definition reasonably led the jury to believe she must prove Mr. Dahl's mental state comports to every classification of persons of unsound mind before he could be found to be of unsound mind. However, it is judicially recognized that jurors are persons of ordinary intelligence who are presumed to construe the use of words in their usual and ordinary sense. A fair reading of the definition reveals that each classification of persons who are of unsound mind is segregated from every other classification of persons who are of unsound mind. The average juror would read the definition in the same manner, particularly since there was no attempt in the pleadings, the voir

dire examination of the jurors, the presentation of evidence, nor in the jury argument to classify Mr. Dahl other than one who was not mentally competent or physically able to attend to his personal and business affairs.

This is not to say that the full statutory definition should be given in every guardianship case, or in any particular case, where a question of unsound mind is the main issue. It is to say that, under the circumstances of this controversy, the giving of the statutory definition is not shown to be reasonably calculated to cause and probably did cause the rendition of an improper judgment. Points one through six are overruled.

■ Mrs. Akin challenges the factual sufficiency of the evidence to support the jury's finding that Mr. Dahl is not of unsound mind. The finding can be set aside only if a consideration of all of the evidence, both supporting and contrary to the finding, leads to the conclusion that the finding is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. *Parrish v. Hunt,* 160 Tex. 378, 331 S.W.2d 304, 305–06 (1960).

No beneficial purpose would be served by detailing or illustrating, even in summary, the evidence adduced at the nine-day trial. Suffice it to state that Mr. Dahl's personal and business affairs were explored in detail. Both parties presented evidence relative to Mr. Dahl's medical history, his health, his business acumen and lack of it, and his behavior, including even his driving habits and his actions concerning his marital plans. From this evidence emerged testimony that Mr. Dahl was not mentally or physically competent to handle his personal or business affairs—four qualifying medical experts who had examined Mr. Dahl, and numerous laypersons who had observed his acts and conduct, expressed the opinion that Mr. Dahl was of unsound mind. From this evidence also emerged testimony that Mr. Dahl was lucid and maintained good business judgment—many laypersons, who had been and were associated with him, gave the opinion that he was of sound mind. The jury had the opportunity to observe the witnesses, including Mr. Dahl as he attended court throughout the nine-day trial, and to weigh their testimony, considering the factors upon which it was based.

■ The evidence bearing on the main issue was conflicting and the testimony was inconsistent. It was for the jury, as the finder of the fact, to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve the conflicts and inconsistencies in the testimony. In its role, the jury was privileged to believe all or part or none of the testimony of any one witness, *Taylor v. Lewis,* 553 S.W.2d 153, 161 (Tex.Civ.App.—Amarillo 1977, writ ref'd n. r. e.), including the opinion testimony of the medical experts which, although uncontroverted by other medical testimony, is not conclusive. *Coxson v. Atlanta Life Ins. Co.,* 142 Tex. 544, 179 S.W.2d 943, 945 (1944).

■ After considering and weighing all of the evidence and extending due deference to the jury's prerogative, it cannot be held that the jury's finding is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. In arriving at this determination, it is recognized that the jury might have, and Mrs. Akin stresses the jury should have, reached the opposite finding from the evidence; but that would not justify the setting aside of the fact finding the jury concluded was the most reasonable under the evidence, for our jurisdiction has found no better way of establishing facts than through the findings of a jury made on sufficient evidence. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 796–97 (1951). The seventh point is overruled.

Improper conduct by Mr. Dahl's counsel during the course of the trial is assigned as prejudicial error. Specifically, improper conduct is said to have occurred in cross examination and by side bar remarks and in jury argument.

■ A deliberate review of the record in relation to the cross examination and side

bar remarks set out in Mrs. Akin's brief reveals that either: no objection was made to the conduct; or the objection made was sustained and, in some instances, evoked an instruction from the court; or, although the cross examination was preempted by a timely objection which was sustained, subsequent cross examination in the area was without objection. Failure to object waives error. *Cooper v. Argonaut Insurance Co.,* 430 S.W.2d 35, 37 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.). Moreover, if an objection to testimony is properly made, subsequent presentation of the same testimony, without further objection, may foreclose appellate review. *Poole v. State Highway Department,* 256 S.W.2d 168, 170 (Tex.Civ.App.—Fort Worth 1953, writ dism'd).

■ Several excerpts from the closing argument by Mr. Dahl's counsel are designated as prejudicial remarks. In spite of the alleged impropriety of the statements on appeal, there was no objection to the jury argument. The designated portions of the argument, if objectionable, were curable. Curable argument requires an objection to preserve reversible error. *Houston Lighting & Power v. Fisher,* 559 S.W.2d 682, 684 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n. r. e.). Because no objection was offered, any error was waived. *Cooper v. Argonaut Insurance Co., supra,* at 37.

■ The fervent ardor generated by the controversy does not escape notice. On occasion, counsel strayed from the prescribed decorum and, on occasion, the trial court acted to curtail conduct it deemed indecorous. By virtue of Tex.R.Civ.P. 269, which requires counsel to confine argument to the evidence and the opposing argument and directs the trial court to rigidly suppress any side bar remarks, control of counsel must rest within the sound discretion of the trial court. It is uniformly held that a reviewing court will not interfere unless it is clear that the trial court abused its discretion in this regard. *Associated Employers Insurance Co. v. Burris,* 321 S.W.2d 112, 118 (Tex.Civ.App.—Amarillo 1959, writ

ref'd n. r. e.). No clear abuse of discretion is perceived.

■ And, although Mrs. Akin views the conduct to be prejudicial to the extent that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment, it cannot be held with any confidence that it was counsel's conduct, and not the evidence heard by the jury, which caused the jury to reach its verdict. Thus, the alleged conduct was not so improper as to warrant a reversal of the judgment. *See Aultman v. Dallas Railway & Terminal Co.,* 152 Tex. 509, 260 S.W.2d 596, 599 (1953). Point eleven is overruled.

■ By her tenth point of error, Mrs. Akin submits that the judgment should be modified to conform to the verdict. To the extent that a reformation of the judgment is necessary to conform it to the verdict, the point is well taken and it is sustained. The jury found that Mr. Dahl is not of unsound mind, but the judgment decreed that he is a man of sound mind. The directing language of Tex.R.Civ.P. 301 mandates that "[t]he judgment of the court shall conform to the . . . verdict." *Accord, Farmer v. Denton,* 231 S.W.2d 908, 910 (Tex.Civ. App.—Amarillo 1950, no writ). So, the judgment must and will be reformed to conform to the verdict.

Lastly, Mrs. Akin contends that the cumulative effect of the errors alleged in her preceding eleven points dictates a reversal of the judgment. Inasmuch as no allegation of error requiring reversal was sustained, the cumulative effect of the allegations does not rise to the height of reversible error. The twelfth point of error is overruled.

Mr. Dahl has presented six cross-points for consideration only if the judgment is reversed and remanded on the strength of Mrs. Akin's points of error. Because the judgment is to be reformed and affirmed, the cross-points are mooted.

Accordingly, the judgment is reformed to eliminate the first decretal provision reading, "1. George Leighton Dahl is a man of sound mind," and, in lieu thereof, to decree

that "1. George Leighton Dahl is not of unsound mind." As thus reformed, the judgment is affirmed.

COUNTISS, J., not participating.