Meridell v. Elston 



 IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-047-CV





MERIDELL ACHIEVEMENT CENTER, INC., 



 APPELLANT


vs.





ARTHUR EARLS, INDIVIDUALLY, AND ON BEHALF OF


THE ESTATE OF ARONZO EARLS AND JAMES J. ELSTON, BY AND


THROUGH HIS NEXT FRIEND, SANDRA ELSTON, AND THE STATE OF TEXAS,



 APPELLEES




 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT



NO. 448,858, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING



 





 Meridell Achievement Center, Inc., ("Meridell") appeals from a judgment against
it awarding personal injury damages to appellees James Elston and Arthur Earls, and denying its
contribution claim against appellee the State of Texas. Arthur Earls sought recovery from
Meridell and Elston for the wrongful death of his son Aronzo Earls, resulting when Elston drove
a Meridell-owned truck and collided with a vehicle occupied by Aronzo and others. By the time
the case was submitted to the jury, Meridell, Arthur Earls, Elston, and the State of Texas, whom
Meridell had impleaded, remained as parties. The jury returned a verdict awarding damages to
Earls and Elston. The jury failed to find Elston guilty of any negligence and apportioned responsibility, 70% to Meridell, 15% to the State of Texas, and 15% to the City of Austin, which
previously had been dismissed from the suit. The trial court rendered judgment on the verdict. 
We will affirm the judgment.



BACKGROUND


 At the age of two, Elston swallowed and expelled drain cleaner. The physical
injuries, their treatment, and the breakdown of his family due to the resulting economic and
emotional strain caused Elston to develop severe emotional and psychological problems. Elston
eventually was institutionalized in Kansas. A court-appointed guardian ad litem and a team of
psychologists placed Elston at Meridell after fully discussing with Meridell Elston's severe
psychological problems, which included violent behavior, a lack of emotional self-control, an
inability to bond with others, and attempts at running away and suicide. At the time of the
accident, Elston had lived at Meridell for two years.

 The day before Elston took the truck, the Meridell staff informed him that he was
scheduled the next morning for an esophageal dilation, a procedure requiring anesthesia which
Elston always found traumatic. The staff also informed Elston that the counselor with whom he
always worked and had befriended would no longer handle his case. Finally, Elston participated
in a family debate over which parent should become his conservator after his release from the
treatment center. Appellees contend that Meridell should have been alert to the possibility that
these events would overwhelm Elston's self-control, especially since Meridell knew about his
previous runaway attempts. Indeed, the staff noted displays of negative behavior, which caused
them to place Elston on a double level of supervision.

 Nevertheless, at one point that night, Matthew Daude, the child-care worker who
was supervising Elston, left his key-ring on a counter near Elston while responding to another
resident. Elston removed the truck keys from the ring and hid them in his sock. Daude failed
to check the key ring and no other resident in the area reported Elston's behavior to Daude.

 At around 12:30 a.m., Daude turned care of Elston over to Martin Goodman, the
supervisor of the cabin where Elston lived. Goodman was a summer employee with no
psychological training. His responsibilities included supervising the daily living activities of a
group, but on the date in question, Goodman worked the night shift in Elston's cabin. Daude told
Goodman that Elston had had problems earlier that evening but had settled down. Daude did not
tell Goodman that Elston was under supervision as a possible runaway; nor did Daude explain to
Goodman the emotional trauma that Elston had experienced that day. No one informed Goodman
that Elston required special supervision. Further, Goodman had little background on the nature
of Elston's emotional and psychological problems.

 Daude left the cabin around 12:45 a.m. Goodman immediately checked the beds;
he then sat in the staff room. Without Goodman's knowledge, Elston left the cabin and drove
away in the Meridell truck. About fifteen minutes after the first bed check, Goodman investigated
a second time and discovered Elston missing.

 While Elston was driving toward Austin, a Leander police officer stopped the truck
because of a defective headlight. Before the officer walked to the cab of the pickup, Elston drove
away. The officer chased him for approximately three minutes but then abandoned the chase as
too dangerous. Texas Department of Public Safety (DPS) Trooper Perez observed the officer
abandon the chase and decided to follow the truck in his unmarked car. Perez called for back-up,
then followed Elston for about twelve miles without attempting to stop him. During this time,
Elston reduced his speed and observed traffic signals. When another DPS trooper and an Austin
police officer responded to Perez's call, the police officer activated his car lights and siren. 
Elston apparently panicked, and another high-speed chase ensued. Trooper Perez did not initiate
the chase and terminated his surveillance when the chase accelerated.

 During the second chase, Elston ignored several traffic signals and reached speeds
up to 100 miles per hour. At the intersection of Highway 183 and Loyola Lane, the truck struck
a car carrying three persons, killing Aronzo Earls and injuring Lester Barrs and Darryl Earls.



PROCEDURAL HISTORY


 The injured occupants and Aronzo Earls's mother, on his behalf and in her own
right, sued Meridell and Elston. Meridell filed a third-party contribution claim against Elston,
the City of Austin, and the State of Texas. The trial court consolidated that lawsuit with one filed
by Arthur Earls against Meridell. Elston eventually sought recovery from Meridell for his
personal injury damages.

 Before trial, the occupants and Aronzo Earls's mother settled all their claims. 
During the trial, all claims against the City of Austin also were dismissed.

 Meridell appeals, bringing forward fifteen points of error. Elston, Arthur Earls,
and Meridell have all filed briefs before this Court; the State of Texas, having settled with Earls
and Elston during the pendency of this appeal, has not.



TRIAL COURT'S CHARGE AND DIRECTED VERDICT


1.  New and Independent Cause

 In point of error one, Meridell complains of the trial court's failure to submit
Meridell's requested instruction on new and independent cause. New and independent cause is
defined as "the act or omission of a separate and independent agency, which destroys the causal
connection between the negligent act or omission of the defendant and the injury complained of,
and thereby becomes, in itself, the immediate cause of such injury." Phoenix Ref. Co. v. Tips,
81 S.W.2d 60, 61 (Tex. 1935). Meridell asserts that both Elston's conduct and the DPS's conduct
constituted new and independent causes interrupting any causal connection between Meridell's
conduct and any injuries.

 Acts or omissions of parties in a suit cannot raise the issue of new and
independent cause. Wiik v. Riggers & Constructors, Inc., 592 S.W.2d 16, 18 (Tex. Civ.
App.--Beaumont 1979, writ ref'd n.r.e.). An instruction for new and independent cause is given
only when a force other than the negligent acts of the parties was responsible for the resulting
injuries. Southland Greyhound Lines v. Cotten, 91 S.W.2d 327, 328-29 (Tex. 1936); Eoff v. Hal
& Charlie Peterson Found., 811 S.W.2d 187, 192-93 (Tex. App.--San Antonio 1991, no writ). 
As both Elston and the DPS were parties charged with negligence in this suit, their conduct cannot
constitute a new and independent cause of any resulting injuries. Thus, the trial court did not err
by refusing to submit the requested instruction. Meridell's first point is overruled.



2.  Agency reports

 Point of error two complains of the trial court's instruction to the jury that it could
not consider two reports by government agencies in determining whether Meridell was negligent
or whether this negligence, if any, was the proximate cause of plaintiffs' damages. Meridell
contends that this instruction impermissibly commented on the weight of the evidence and
therefore constitutes grounds for reversal. We do not agree.

 Meridell argues that since the court gave no limiting instruction at the time it
admitted the reports, they were admitted for all purposes and the appellees waived any right to
have the judge limit their consideration. Because appellees failed to request a limiting instruction
when the reports were offered, they could not complain of the judge's failure to give such an
instruction. However, that is not the question before us.

 Appellees contend that the instruction merely served to limit the jury's
consideration of the evidence to the purpose for which it had been admitted. Meridell offered the
first report to disprove any cover-up of the incident by Meridell and the Department of Human
Services. It then offered the second report during cross-examination of Elston's expert witness,
who had used it as a source for his opinions. Neither offer related to the contents of the reports
or the veracity of their conclusions, although the witnesses did discuss generally the conclusions
reached in the reports.

 A trial judge has discretion over rulings on the admissibility of evidence and will
not be overturned on appeal absent an abuse of that discretion. Thompson v. Mayes, 707 S.W.2d
951, 956 (Tex. App.--Eastland 1986, writ ref'd n.r.e.). Nothing in Texas Rule of Civil Evidence
105(a) suggests a court may not give a limiting instruction at any time during trial. That rule
merely provides that when evidence admissible for only one purpose is admitted, the court, upon
request, shall restrict the evidence to its proper scope, but that absent such request the court's
action on admitting the evidence is not grounds for appeal. One commentator concludes that this
rule by inference allows judges to issue limiting instructions on their own motion. James P.
Wallace, Texas Rules of Evidence Handbook, 20 Hous. L. Rev. 1, 101-02 (1983). Here, the trial
court instructed the jury on the grounds for which the reports were admitted.

 The trial court's instruction, in any case, did not comment on the weight of the
evidence. An instruction is such a comment "if its wording indicates the verity or accuracy of the
fact to be determined." In re Dahl, 590 S.W.2d 191, 196 (Tex. Civ. App.--Amarillo 1979, writ
ref'd n.r.e.). The instruction in this case, just as the instruction in Dahl, merely precludes the
jury's use of the reports to determine the issues of negligence or proximate cause. Nothing in the
instruction suggests that the trial court considered Meridell negligent. We hold that the trial
court's instruction to the jury was a permissible limiting instruction, not a comment on the weight
of the evidence. We overrule Meridell's second point.



3.  Directed verdict for the DPS regarding Trooper Perez

 Meridell argues that the trial court erred in directing a verdict in favor of the DPS
in regard to any actions taken by Trooper Perez. It contends that these acts were negligent and
that the DPS is liable for this negligence under the Tort Claims Act, Tex. Civ. Prac. & Rem.
Code Ann. § 101.021 (West 1986). (1) Meridell argues that Trooper Perez used tangible personal
property owned by the state when he radioed for assistance. It further argues that "use" includes
"failure to use" and that Trooper Perez's failure to use his car to block Elston's path was a misuse
of tangible personal property.

 The Tort Claims Act contains several exclusions from liability. One of those
exclusions concerns actions of an employee while responding to an emergency call or reacting to
an emergency situation if the actions are in compliance with applicable laws and ordinances. Id.,
§ 101.055(2). Another provision exempts governmental units from liability for a decision not to
perform an act, or failure to make a decision whether to perform an act, if the act is discretionary. 
Id., § 101.056(2). Both of these exclusions exempt Trooper Perez's actions from forming a basis
for the DPS's liability.

 Deciding whether to block a vehicle attempting to escape and whether or not to
request assistance are discretionary acts within the judgment of individual law enforcement
officers. Further, initiating surveillance of a speeding vehicle attempting to outrace police pursuit
is a response to an emergency situation.

 Courts have traditionally refrained from attempts to circumscribe police decisions
in light of the variety of dangerous circumstances calling for immediate police action. Requiring
uniform treatment of these situations would not be appropriate; the officer must have some
discretion to act. See Dent v. City of Dallas, 729 S.W.2d 114, 116 (Tex. App.--Dallas 1986, writ
ref'd n.r.e.). All responses to emergencies must nonetheless comply with applicable statutes and
ordinances. Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2) (West 1986). Two different
statutes require police vehicles responding to emergencies to drive with due regard for the safety
of all persons. Tex. Rev. Civ. Stat. Ann. art. 6701d, §§ 24(e), 75(b) (West 1977). Failure to
comply with these statutes can raise the question of negligence. Travis v. City of Mesquite, 830
S.W.2d 94, 98-99 (Tex. 1992). However, there is no evidence in the record that Trooper Perez
failed to drive with due regard for the safety of other motorists. Therefore, Trooper Perez's
actions provide no basis for liability against the DPS. We overrule point of error four.



4.  Actions of the DPS and APD

 The trial court instructed the jury that



[i]n considering the negligence, if any, of APD [Austin Police Department] and/or
the Texas DPS, you are to consider only the officer(s) operation of a motor vehicle
during the pursuit of James Elston. As to DPS, you may consider only the actions
of Trooper Holmes. As to APD, you may consider only the actions of the Officers
Gann, Hines, Smith and Haggerty.



Meridell contends that this instruction by the trial court impermissibly commented on the weight
of the evidence by forbidding the jury's consideration of Trooper Perez's conduct and the policies
of DPS and APD for high speed chases. We do not agree. First, since we hold that the trial court
properly directed a verdict in regard to Trooper Perez's actions, his conduct could not serve as
evidence of the DPS's negligence. Second, the only situation where the exclusions from the Tort
Claim Act are inapplicable under Travis is when emergency and police vehicles do not drive with
due regard for other drivers. Therefore, only the operation of their vehicles by the police and the
DPS trooper in responding to the emergency, Elston's flight, could form the basis for any
negligence committed by the City of Austin and the DPS. The trial court's instruction correctly
informed the jury to consider only the proper evidence in the case. We overrule Meridell's third
point.



EVIDENTIARY RULINGS


1.  Admission of audiotape

 In point of error five, Meridell challenges the admission into evidence of an
audiotape from a recorder that was placed in the car where Elston was held after the accident. 
It records his discussions with police and medical personnel as well as his personal remorse over
the accident. The tape was apparently recorded without Elston's knowledge.

 Meridell first challenges the admission of the audiotape on the basis of relevance. 
The tape, however, is relevant on three considerations. First, Elston explains his physical injuries
to the paramedic on the tape; this portion relates to the issue of damages. Second, the tape is
proof of mental anguish suffered by Elston. Finally, the tape refuted evidence that Meridell had
introduced regarding Elston's actual mental state. See Rego Co. v. Brannon, 682 S.W.2d 677,
682 (Tex. App.--Houston [1st Dist.] 1984, writ ref'd n.r.e.).

 Next, Meridell contends that the probative value of the tape is substantially
outweighed by the danger of unfair prejudice. In such a situation, even relevant evidence may
be excluded. Tex. R. Civ. Evid. 403. The trial court listened to the tape before ruling that it
should be admitted. The admission or exclusion of relevant evidence under Rule 403 is a matter
within the discretion of the trial court. Williams v. Union Carbide Corp., 734 S.W.2d 699, 703 (Tex. App.--Houston [1st Dist.] 1987, writ ref'd n.r.e.). After listening to the tape, we find no
abuse of the trial court's discretion. Accordingly, we overrule Meridell's fifth point.



2.  Exclusion of evidence of Trooper Holmes's reputation for truthfulness

 In point of error number six, Meridell complains of the trial court's exclusion of
evidence of Trooper Holmes's reputation for truthfulness.

 Meridell's complaint is misplaced. Outside the presence of the jury, the trial court
overruled the DPS's objection to the admission of character evidence while indicating that
Meridell must lay a proper predicate for its introduction. While Trooper Holmes was on the
stand, Meridell failed to lay a predicate or even mention this evidence, which was ultimately
elicited in its bill of exception. (2) Meridell cannot now complain that the trial court improperly
excluded evidence that was never properly presented to the court according to its instructions. 
We overrule point of error six.



SUFFICIENCY OF THE EVIDENCE


 In points of error seven, eight, and nine, Meridell challenges the jury's failure to
find that Elston was negligent and states that its motion for judgment notwithstanding the verdict
(JNOV) or, alternatively, its motion for a new trial should have been granted.

 Meridell complains that the trial court erred in overruling its motion for JNOV
because the undisputed evidence established as a matter of law that Elston's negligence
proximately caused his damages. This challenge is best characterized as a legal-sufficiency point. 
See William Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient
Evidence," 69 Tex. L. Rev. 515, 518 (1991).

 In deciding a legal-sufficiency challenge that attempts to overcome an adverse
finding of fact as a matter of law, we must first consider only the evidence and inferences tending
to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. 
If there is no evidence to support the finding, we must then examine the entire record to see if the
contrary proposition is established as a matter of law. Sterner v. Marathon Oil Co., 767 S.W.2d
686, 690 (Tex. 1989); Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1986). See generally Michol
O'Connor, Appealing Jury Findings, 12 Hous. L. Rev. 65, 78-80 (1974).

 Meridell also challenges the factual sufficiency of the evidence to support the jury's
failure to find Elston negligent. In reviewing the factual sufficiency of the evidence to support
a jury's failure to find a fact, we must consider and weigh all the evidence and set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Parrish v. Hunt, 331 S.W.2d 304
(Tex. 1960). Further, the denial of a motion for a new trial should be reversed on appeal only
upon a showing of an abuse of discretion. Grisson v. Watson, 704 S.W.2d 325, 326 (Tex. 1986).

 Meridell argues that Elston's conduct constitutes negligence per se because he
exceeded the speed limit. However, the conduct of a child is not to be judged by the standard of
an adult simply because statutory negligence, or negligence per se, is involved rather than
common-law negligence. Rudes v. Gottschalk, 324 S.W.2d 201, 205 (Tex. 1959). Generally,
a minor is required to use only the care which a child of the same age, intelligence, and
experience would use. City of Austin v. Hoffman, 379 S.W.2d 103, 107 (Tex. Civ. App.--Austin
1964, no writ); see also Restatement (Second) of Torts § 283A (1965).

 Meridell argues that the trial court improperly instructed the jury to evaluate
Elston's conduct against the standard of "an ordinary prudent child of the same age, experience,
intelligence and capacity . . . under the same or similar circumstances." Having failed to object
to the jury charge, however, Meridell has waived any error regarding the application of this
standard of care. Tex. R. Civ. P. 272.

 Applying this standard, we find evidence in the record from which the jury could
conclude that Elston or a child in similar circumstances would lack the capacity to control his
behavior. Pam Botts, a clinical psychologist who had been in contact with Elston over a period
of several years, testified that he had an impulse-control problem. Dr. Richard Coons, a
psychiatrist, provided his expert opinion that Elston suffered from a conduct disorder that made
his behavior impulsive and out of control.

 Although the record contains evidence that Elston knew that he should not steal the
truck or continue to flee from the pursuing officers, both legally and factually sufficient evidence
exists to support the jury's failure to find that Elston could adequately control his behavior. There
is evidence to support the jury's refusal to find Elston negligent, and the verdict is not against the
great weight and preponderance of the evidence. We overrule points of error seven, eight, and
nine.



DAMAGES


 Points of error ten through fifteen deal with the award of $859,000 in damages to
Elston. In Meridell's tenth point, it insists that Elston failed to prove he was liable for future
medical expenses notwithstanding his status as a minor. It is true that when a minor sues alone,
or through a next friend who is not his parent, he must prove his direct liability apart from that
of his parents. Sax v. Votteler, 648 S.W.2d 661, 666 (Tex. 1983). Here, however, Elston's
mother has sued both in her own behalf and as next friend for her son. The requisite proof
outlined in Sax is thus inapplicable.

 Appellant's eleventh point of error complains that Elston failed to segregate
damages that would be incurred during his minority and afterwards. Meridell's brief refers to
objections made at the charge conference and assertions in its motion for new trial that raised this
point. However, upon examination of the record, we are unable to find that any such argument
was made to the trial court; therefore, the issue has not been preserved for appeal. Tex. R. App.
P. 52(a).

 Meridell's twelfth and thirteenth points of error are similar to its tenth point, with
two additional arguments. First, Meridell claims that Elston presented no evidence showing a
causal link between his accident and the damages he suffered. Both Botts and Dr. Coons testified
that the procedures they recommended Elston undergo were necessary as a result of his accident
and the accompanying trauma. Thus, the record contains sufficient evidence to support a
connection between Meridell's conduct and Elston's damages.

 Next, Meridell attacks the competency of Coons in testifying about the
reasonableness and necessity of Elston's expenditures on medical procedures. Meridell first
objected successfully at trial that Elston failed to lay a predicate showing Coons's expertise on this
issue. Once Elston established Coons's familiarity in dealing with the cost of institutional care
in Texas, the trial court properly overruled the same objection in light of a proper predicate. 
Meridell has not shown the trial court erred in deeming Coons competent as an expert on medical
expenses.

 Meridell's fourteenth point of error claims that Elston failed to "segregate" its
damages. This complaint is not accurately phrased; Meridell is actually complaining that Elston
failed to prove the difference between the expenses necessary after the accident and costs that
resulted from Elston's pre-existing condition. Botts and Coons testified that the treatment they
recommended was only necessary because of the trauma Elston suffered from the accident; they
considered the improvements he had made while at Meridell completely dissipated by this event.
Furthermore, the court instructed the jury not to award any damages for Elston's pre-existing
condition. We find no error.

 Meridell's fifteenth point asserts that the damages awarded by the jury were
excessive. The standard of review for determining whether a remittitur is appropriate is the same
as when we review a factual sufficiency challenge. Rose v. Doctors Hosp., 801 S.W.2d 841, 847
(Tex. 1990). Unless an award is flagrantly outrageous, extravagant, and so excessive as to shock
the conscience, it should not be disturbed on appeal. American Bank v. Waco Airmotive, 818
S.W.2d 163, 175 (Tex. App.--Waco 1991, writ denied). Botts and Coons both testified that
treatment necessary to help Elston recover from the trauma associated with the accident would
cost around $800,000. Meridell introduced no evidence contradicting these assertions. This case
involved a severely troubled boy who was further scarred by the knowledge that he had killed an
innocent person. We cannot hold that the jury award was so excessive as to require remittitur. 
We overrule all of Meridell's points of error dealing with damages.

 Having overruled all of Meridell's points of error, we affirm the judgment of the
district court.



 

 Marilyn Aboussie, Justice

[Before Chief Justice Carroll, Justices Aboussie and B. A. Smith]

Affirmed

Filed: January 13, 1993

[Do Not Publish]

1.   This section of the Tort Claims Act waives governmental immunity when 1) the
injury is caused by the wrongful act or omission or negligence of an employee acting in
the course and scope of employment, and the damage arises from the use or operation of
a motor vehicle, or 2) the injury is caused by the use of tangible personal or real
property. 
2. [2]  Meridell claims that it raised the character issue in the following exchange with the trial
court:


MR. LYNCH: Your honor, I would request permission to proceed to the
matters that we brought up outside of the jury's presence with
regard to this witness' voluntary statement and his statement
here in court regarding the pursuit.


THE COURT: The objection presented by the Counsel for the Department of
Public Safety at this time would be sustained.


While counsel's statement may have put the trial court on notice of his desire to impeach the
witness with a prior inconsistent statement, it did not indicate his intent to raise the issue of
Trooper Holmes's reputation for truthfulness.