

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00275-CV

_____

IN RE: THE COMMITMENT OF JEFFREY PARKINSON

On Appeal from the 158th District Court
Denton County, Texas
Trial Court No. 21-6836-158

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

### I. Introduction

Appellant Jeffrey Parkinson challenges his civil commitment as a sexually violent predator (SVP). *See generally* Tex. Health & Safety Code Ann. ch. 841 (the SVP Act). Parkinson raises two issues in which he argues that the trial court erred by sustaining the State's objection during his cross-examination of the State's expert witness and in sustaining the State's objection during his closing argument. Because we find that the trial court did not err by sustaining each of the complained-of objections, we will affirm.

### II. Factual and Procedural Background

In 2005, when Parkinson was a juvenile, he was adjudicated as a delinquent and placed on probation for two years after the trial court found that he had committed the offense of sexual assault. In 2018, Parkinson pleaded guilty to two counts of the offense of indecency with a child and was sentenced to six years' confinement.

In 2021, before his scheduled release date of March 20, 2023, the State filed a petition alleging that Parkinson is an SVP and requesting that he be committed for treatment and supervision pursuant to the SVP Act. A trial began on May 2, 2022, and two witnesses testified: Parkinson and the State's expert, Dr. Kyle Clayton, a psychologist who evaluated Parkinson. Dr. Clayton testified that he has a master's degree and a Ph.D. in clinical psychology and was on the faculty of UT Southwestern as part of the psychiatry residency program. His board certification was in forensic

psychology, which is an "application of psychology to issues of the law." The jury found beyond a reasonable doubt that Parkinson is an SVP. The trial court then ordered Parkinson civilly committed in accordance with Section 841.081 of the Texas Health and Safety Code. *See id.* § 841.081. This appeal followed.

Parkinson does not challenge the sufficiency of the evidence to support the jury's finding that he is an SVP. Therefore, we will give only a brief summary of the evidence at trial.

## A. Parkinson's Testimony

Parkinson described his childhood as typical but admitted that he had some problems with authority. Parkinson acknowledged that he has struggled with substance abuse since he was young, but he had never had any substance abuse treatment.

Parkinson testified that he committed his first sexual offense when he was 13 years old. He was adjudicated as a delinquent and placed on probation for sexually assaulting a 6-year-old girl while at his step-father's company party. Parkinson violated the terms of his probation when he committed another sexual offense against a child and was sent to the Texas Youth Commission (TYC) where he was required to undergo sex offender treatment. But he was kicked out of the program for lack of progress. Parkinson was released from TYC when he was 16 years old.

Parkinson is currently incarcerated for committing offenses against his 11-year-old cousin. Parkinson was 23 years old at the time of the offenses. Parkinson

3

stated that he was "under the influence" at the time of the offenses and does not remember many of the details. Parkinson testified that he is not attracted to underage girls and that when released he will not be around any children other than his son. Parkinson had been diagnosed with ADHD and bipolar disorder, and he took medication for schizophrenia. He agreed that he could benefit from further sex offender treatment, stating, "I feel like I might still have some flaws and just need to be tweaked."

## B. Dr. Clayton's Testimony

According to Dr. Clayton, in conducting civil commitment evaluations, he reviews the records related to the individual, interviews the individual, and also conducts testing and reviews the results to evaluate the individual's risk of reoffending. Dr. Clayton testified that the methodology he uses accords with his training as a forensic psychologist and is within the accepted standards in the field of forensic psychology. Dr. Clayton discussed each of Parkinson's sexual offenses and stated that he relied on those facts in conducting his behavioral evaluation.

Based upon his evaluation, Dr. Clayton diagnosed Parkinson with exhibitionist disorder, pedophilic disorder, alcohol and substance abuse disorder, and a personality disorder that includes both antisocial and borderline personality features. Dr. Clayton opined that Parkinson suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence.

4

### III. Law on Civil Commitment

A person is an SVP if the person "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a). A behavioral abnormality is: "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2). A "predatory act" is "an act directed toward individuals, including family members, for the primary purpose of victimization." *Id.* § 841.002(5).

### IV. Cross-Examination

In his first issue, Parkinson argues that the trial court erred by sustaining the State's objection during the cross-examination of Dr. Clayton regarding potential motivation for sex offending behavior.[1] The trial court did not abuse its discretion when it sustained the State's objection to the proposed cross-examination; the proposed line of cross-examination mischaracterized the proof necessary to establish that Parkinson suffered from a behavioral abnormality.

---

[1]The State contends that Parkinson has not preserved this issue for appellate review because he did not make an offer of proof showing the evidence he desired to admit. However, after the State's objection, there was extensive argument on the evidence Parkinson desired to be admitted. The discussion on the objection adequately fleshed out what Parkinson's counsel wanted to elicit in cross-examination. *See In re Commitment of Smith*, 422 S.W.3d 802, 808–09 (Tex. App.—Beaumont 2014, pet. denied); *Chance v. Chance*, 911 S.W.2d 40, 52 (Tex. App.—Beaumont 1995, writ denied).

## A. Standard of Review

A trial court's rulings admitting or excluding evidence are reviewable under an abuse of discretion standard. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015). An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis in the record for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007).

## B. Dr. Clayton's Testimony

During the cross-examination, Parkinson questioned Dr. Clayton on the Risk of Sexual Violence Protocol (RSVP) assessment tool. Parkinson noted that there were areas of the RSVP that Dr. Clayton did not complete. Dr. Clayton explained that he did not complete those sections because he was not developing a treatment plan for Parkinson. One of the areas not completed by Dr. Clayton concerned the motivating factor for sexual offending behavior. Parkinson asked, "And our - - the law that we're looking at has a definition for predatory act that is the primary purpose of victimization?" Dr. Clayton responded "yes" and again stated that he assessed motivation in his evaluation of Parkinson but did not fill out that portion of the RSVP because he was not developing a treatment plan for Parkinson.

Parkinson then asked Dr. Clayton to opine, as a forensic psychologist, what the motivating factor would be for somebody to commit a sexual offense. Dr. Clayton

6

responded that it can be different things for different people. Parkinson then asked, "And our - - our law says an act done for the primary purpose of victimization." The State objected that it was a mischaracterization of the law, and, after arguments from counsel, the trial court sustained the objection.

## C. Analysis

Parkinson argued to the trial court that it was for the jury to decide whether the primary purpose is for victimization. Parkinson contends that the trial court denied him the ability to present necessary information to the jury as to how Dr. Clayton came to the conclusion that Parkinson's primary purpose was victimization and had no other motivating factors.

However, the State did not have to separately prove Parkinson's primary purpose was victimization and had no other motivating factors. Our court and others have dealt with Parkinson's argument in the context of a sufficiency challenge. Recently, we dealt with a sufficiency challenge predicated on the State's alleged failure to prove whether a defendant suffered from a behavioral abnormality because the State "presented no evidence that [the alleged SVP] would commit an act directed toward individuals 'for the primary purpose of victimization' and thus no evidence that he is likely to engage in predatory behavior." *In re Commitment of Hayes*, No. 02-18-00018-CV, 2018 WL 4627064, at *3 (Tex. App.—Fort Worth Sept. 27, 2018, no pet.) (mem. op.). In *Hayes*, we explained in detail why the argument revealed a

7

misunderstanding of the State's burden to prove that a defendant suffers from a behavioral abnormality:

> [Appellant] misunderstands the State's burden. The Houston 14th Court of Appeals addressed this issue last year. *See In re Commitment of Harris*, 541 S.W.3d 322, 328–29 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The Houston court considered the Texas Supreme Court's opinion in *In re Commitment of Bohannan*, which reversed a Beaumont Court of Appeals decision bisecting the definition of behavioral abnormality into two separate, required components: "[1] an acquired or congenital condition, and [2] a predisposition to commit a sexually violent offense." 388 S.W.3d 296, 302 (Tex. 2012). The Supreme Court explained that this bisecting misconstrued the statute because "[t]he required condition *is* the predisposition." *Id.* at 302. Thus,
>
> > [t]he definition [of behavioral abnormality] might more clearly be written:
> >
> > > "Behavioral abnormality" means a congenital or acquired predisposition, due to one's emotional or volitional capacity, to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person.
> >
> > The condition and predisposition cannot be separate things.
>
> *Id.* at 303.
>
> Based on that opinion, the Houston Court of Appeals held in *Harris* that "evidence of a person's predisposition to commit a sexually violent offense to the extent that he becomes a menace to the health and safety of another person is sufficient to show that the person is likely to engage in a predatory act of sexual violence for the primary purpose of victimization." *Harris*, 541 S.W.3d at 329; *see also In re Commitment of Sternadel*, No. 14-17-00051-CV, 2018 WL 1802151, at *4 (Tex. App.—Houston [14th Dist.] Apr. 17, 2018, no pet.) (mem. op.) ("That an act would be 'for the primary purpose of victimization' is not a separate element that must be proved."); *In re Commitment of Colantuono*, 536 S.W.3d 549, 558 (Tex. App.—San Antonio 2017, no pet.) ("[I]mplicit in

a finding that a person suffers from a behavioral abnormality is a conclusion that the person is likely to engage in a predatory act of sexual violence for the primary purpose of victimization[.]"); *In re Commitment of Ramirez*, No. 09-13-00176-CV, 2013 WL 5658597, at *2 (Tex. App.—Beaumont 2013, no pet.) (mem. op.) (same). We agree. Accordingly, the State did not need to specifically bring up and address the "primary purpose" definition of an SVP to prove that [Appellant] is an SVP. The evidence was sufficient if it showed that [Appellant] is predisposed to commit a sexually violent offense, to the extent that he is a menace to the health and safety of another person. *See Bohannan*, 388 S.W.3d at 303; *Harris*, 541 S.W.3d at 329.

*Id.*; *see also In re Commitment of K.S.*, 622 S.W.3d 569, 574–75 (Tex. App.—Waco 2021, no pet.) (cataloguing opinions in which Texas courts have held that a conclusion that a person is likely to engage in a predatory act of sexual violence directed towards individuals for the primary purpose of victimization "is implicit in the finding that a person has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence").

Here, Parkinson is attempting to wire into his cross-examination the suggestion that the State bore the burden to establish his purpose was to victimize. But as we and other courts have explained, the topic that Parkinson sought to delve into on cross is irrelevant—that topic inquired about an element of proof that the State does not bear to establish that a defendant suffers from a behavioral abnormality. *See Merrifield v. Seyferth*, 408 S.W.2d 558, 560 (Tex. App.—Dallas 1966, no writ) ("Although wide latitude is allowed a party to cross-examine an adverse witness in order to show interest, bias, or prejudice to affect his credibility, and the only limitation is that of relevancy, . . . this valuable right is subject to that limitation and

9

'confers no right upon a litigant to examine a witness upon matters which are irrelevant and immaterial.'"); *Shelby v. James*, No. 02-20-00052-CV, 2021 WL 4319706, at *5 (Tex. App.—Fort Worth Sept. 23, 2021, no pet.) (mem. op.) (quoting *Merrifield)*. Because the State did not have to prove Parkinson's primary purpose in committing the offenses, Parkinson was not denied the opportunity to present necessary information to the jury. Dr. Clayton testified extensively on how he formed his opinion that Parkinson suffers from a behavioral abnormality, and Parkinson was able to cross-examine Dr. Clayton on his methods in forming that opinion. Because the trial court did not abuse its discretion by sustaining the State's objection on Parkinson's cross-examination of Dr. Clayton, we overrule the first issue.

## V. Closing Argument

In his second issue, Parkinson argues that the trial court erred by sustaining the State's objection during closing argument and preventing him from presenting a particular jury argument. During his closing argument, Parkinson stated,

> Predatory act. An act directed toward individuals for the primary purpose of victimization. Now, the charge that you just received, or you will receive but was read to you, says if the judge gives you  - - if the judge gives you a definition, you consider it a proper legal definition. Predatory act for the primary purpose of victimization is - -

The State objected that the argument was a mischaracterization of the law and argued that it is a unified issue. The trial court sustained the objection.

10

## A. Standard of Review

Rule 269 provides that arguments on questions of law shall be addressed to the court. Tex. R. Civ. P. 269(d). Arguments on the facts should be addressed to the jury, and counsel is required to confine the argument strictly to the evidence and to the arguments of opposing counsel. Tex. R. Civ. P. 269(e); *see Tex. Sand Co. v. Shield*, 381 S.W.2d 48, 57–58 (Tex. 1964). The duty rests with the trial court to supervise and properly limit the scope of counsel's argument. *See City of Dallas v. Andrews*, 236 S.W.2d 609, 613 (Tex. 1951). Thus, a reviewing court will not interfere with the trial court's duty unless it is clear that the trial court abused its discretion. *In re Guardianship of Dahl*, 590 S.W.2d 191, 199 (Tex. App.—Amarillo 1979, writ ref'd n.r.e.); *see In re C.J.B.*, 137 S.W.3d 814, 826 (Tex. App.—Waco 2004, no pet.).

## B. Analysis

The jury was asked to determine whether Parkinson is an SVP as defined by factors in Section 841.002 and Section 841.003.

Parkinson contends that the jury, as factfinder, must determine whether the act was committed for the "primary purpose of victimization." *See* Tex. Health & Safety Code Ann. § 841.002(5). As a result, he argues he was entitled to argue to the jury that Dr. Clayton's definition of predatory act was not a proper legal definition and that Parkinson's primary purpose or motivating factor may not have been for the purpose of victimization.

11

As previously stated, the State did not have to prove the primary purpose of victimization as a separate element. *Hayes*, 2018 WL 4627064, at *3. Whether a person suffers from a behavioral abnormality that makes a person likely to engage in a predatory act of sexual violence is a single, unified issue. *Bohannon*, 388 S.W.3d at 303. Therefore, the jury was not required to determine Parkinson's primary purpose or motivation separate and apart from finding that he suffered from a behavioral abnormality. Parkinson was not entitled to present an argument to the jury requiring a separate finding on the motivation or purpose of victimization.

Parkinson also argues that Dr. Clayton's definition of predatory act presented to the jury was not a proper legal definition and that he was entitled to make a fair, legal argument defining predatory act. Arguments on questions of law are to be addressed to the court. Tex. R. Civ. P. 269(d). The jury was properly instructed on the law for finding Parkinson to be a sexually violent predator, including the definition of predatory act. Absent record evidence to the contrary, we presume that the jury followed the court's instructions. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 771 (Tex. 2003).

During closing argument, Parkinson scrutinized Dr. Clayton's testimony and questioned his ability to testify about a legal definition. Parkinson argued to the jury that the State could not prove beyond a reasonable doubt that he was an SVP. Parkinson was not prevented from making an argument to the jury that he was

entitled to make.  We find that the trial court did not abuse its discretion by sustaining the State's objection to Parkinson's argument.  We overrule the second issue.

## VI.  Conclusion

Having overruled Parkinson's two issues on appeal, we affirm the trial court's civil commitment order.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  April 6, 2023