66 S.W.3d 449 (2001)
In the Interest of M.E.C., a Child.
No. 10-00-297-CV.
Court of Appeals of Texas, Waco.
December 12, 2001.
*450 Nita C. Fanning, Waco, for appellant.
*451 Cathren Page Koehlert, Texas Dept. of Protective & Regulatory Services, Austin, for appellee.
Lynnan L. Kendrick, Waco, Attorney Ad Litem.
Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

OPINION
REX D. DAVIS, Chief Justice.
A jury recommended that Dionisio Castillo's parental rights be terminated with respect to his three-year-old daughter M.E.C. The court rendered judgment in accordance with the verdict. Castillo claims in seven issues that: (1) there is no evidence and factually insufficient evidence that he knowingly placed or knowingly allowed M.E.C. to remain in conditions or surroundings which endangered her physical or emotional well-being; (2) there is no evidence or factually insufficient evidence that he had notice of the court's temporary orders with which the jury found he had failed to comply; (3) the court improperly commented on the weight of the evidence when it admitted copies of these orders in evidence; (4) the court improperly commented on the weight of the evidence when it admitted in evidence a copy of the jury charge from the prior termination trial of M.E.C.'s mother; (5) the submission of Castillo's failure to comply with the temporary orders as an alternative basis for termination taints the verdict because "its proof per se requires the admission of the underlying temporary orders which constitutes an impermissible comment on the weight of the evidence"; and (6) the court exceeded its authority by imposing termination as a sanction for criminal contempt of its order (two issues).

BACKGROUND
M.E.C. was born to Castillo and Dollie Thurman in September 1998. During Dollie's pregnancy, they lived in the home of her mother Donna Thurman. Soon after M.E.C.'s birth, they moved out of Donna's home.[1] They moved to Austin where they lived for several months in an apartment with Castillo's brother. Federal immigration authorities deported Castillo to Mexico in January 1999. Dollie returned to Waco. Castillo returned to Waco about one month later. He testified that he lived in a friend's apartment for about one month before he moved back into Donna's home with Dollie.
An investigator with the Child Protective Services Division of the Texas Department of Protective and Regulatory Services ("CPS") went to Donna's house on Tuesday, February 23, 1999 to investigate a referral regarding M.E.C.'s welfare. Dollie met him at the door and gave a false name. She told him that Dollie had recently moved from the home and that no children were there. She would not allow him to enter. At his supervisor's advice, he summoned police assistance. He found Castillo, Dollie, and M.E.C. in Donna's house. Castillo and Dollie denied that they were living there at the time.
The investigator described the home as follows:
The home had an awful odor of cat feces. The home was covered with animal feces on the tables, furniture, floors, and there was feces-soiled clothing piled on top of several open space heaters. There was old food scattered all over the house.
One of the police officers contacted the City of Waco Inspection Services Department and requested that an inspector *452 come and assess the home. The inspector "green tagged" the home because he deemed it "unfit to live in ... due to the unsanitary living conditions." Castillo, Dollie and Donna spent the remainder of the week and the weekend cleaning the house. The inspector removed the green tag on the following Monday.
CPS removed M.E.C. from the home and instituted emergency proceedings under chapter 262 of the Family Code. CPS held a permanency planning team meeting on March 15, during which they met with Castillo and Dollie and developed a Family Service Plan. The service plan established a series of tasks which Castillo and Dollie were to accomplish for reunification of the family. For Castillo, these tasks included: paying monthly child support of $50; maintaining adequate employment to provide for M.E.C.'s basic needs; obtaining and maintaining a clean and safe home; participation in a "parenting capability test"; random urinalysis; drug and alcohol assessment; and a psychological evaluation.
CPS Supervisor Jesse Guardiola testified that he discussed these tasks with Castillo both in English and in Spanish. Castillo never received a written copy of this service plan. The written service plan was completed and signed by CPS officials on April 1. Dollie signed the plan on April 2. A handwritten notation indicates that Castillo was "not available to sign. Copy left with the mother."
During the course of the proceedings, CPS lost contact with Castillo. He did not appear at the first adversary hearing conducted one week after M.E.C.'s removal. He likewise failed to appear at the status hearing held almost two months after her removal. According to various orders issued by the court during the course of the litigation, Castillo's whereabouts were unknown. CPS filed a first amended petition in December 1999 seeking termination of Castillo's and Dollie's parental rights. Because Castillo's whereabouts were unknown, CPS obtained service on Castillo by publication. Dollie filed a status affidavit in May 2000 indicating that Castillo's last known address was "Mexico."
CPS had been prepared to take a default judgment against Castillo in a July 2000 trial.[2] However, an attorney appointed to represent him located him shortly before trial. She spoke to him by telephone for the first time on the night before trial. The following morning Castillo appeared for court. His counsel informed the court that he does not speak fluent English. She asked that the court allow her to withdraw and appoint a Spanish-speaking attorney to represent him. She also requested a continuance for additional time to prepare for trial. The court granted both requests and elected to conduct a separate trial for each parent. CPS and Dollie proceeded to trial, and the jury returned a verdict on July 14 that her parental rights should be terminated. The court signed an interlocutory decree in accordance with the verdict on July 31.
CPS filed a second amended petition on July 17. CPS alleges in this pleading that termination of Castillo's parental rights is warranted because he:
 knowingly placed or knowingly allowed M.E.C. to remain in conditions or surroundings which endangered her physical or emotional well-being;
 engaged in conduct or knowingly placed her with persons who engaged *453 in conduct which endangered her physical or emotional well-being;
 constructively abandoned her while she was in CPS custody; and
 failed to comply with the court's temporary orders which established the actions necessary for him to obtain her return.
See Tex. Fam.Code. Ann. § 161.001(1)(D), (E), (N), (O) (Vernon Supp.2002).
CPS and Castillo proceeded to trial on August 7. The jury found in CPS's favor on the first and last of these allegations.[3] The jury refused to make affirmative findings on the other two grounds for termination. The jury also found that termination of Castillo's parental rights is in M.E.C.'s best interest. The court signed a termination decree in accordance with the verdict on August 18.

DANGEROUS CONDITIONS/SURROUNDINGS
Castillo contends in his first issue that there is no evidence and factually insufficient evidence that he knowingly placed or knowingly allowed M.E.C. to remain in conditions or surroundings which endangered her physical or emotional well-being.

STANDARD OF REVIEW
When we decide a "no evidence" point, we consider only the evidence and inferences which tend to support the contested issue and disregard all evidence and inferences to the contrary. Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.1997). We will sustain a no evidence point if: (a) there is a complete absence of evidence of a vital fact; (b) we are barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. Id. (citing Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L.Rev. 361, 362-63 (1960)). "More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, `rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.' "Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex.1995) (quoting Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex.1994)). We apply this standard of review in termination cases, which require proof by clear and convincing evidence, even though this standard was developed in preponderance-of-the-evidence cases. See In re A.P., 42 S.W.3d 248, 256 (Tex.App.-Waco 2001, no pet.); Justice Bill Vance, The Clear and Convincing Evidence Standard in Texas: A Critique, 48 Baylor L.Rev. 391, 413 (1996).
A factual sufficiency challenge requires us to consider and weigh all the evidence, not just the evidence which supports the verdict. Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex.1998); In re King's Estate, 150 Tex. 662, 664-65, 244 S.W.2d 660, 661 (1951). Because a termination case invokes the *454 clear-and-convincing standard, we will set aside the challenged finding only "if the trier of fact could not reasonably find the existence of the fact to be established by clear and convincing evidence."[4]A.P., 42 S.W.3d at 256 (quoting Spangler v. Texas Dep't of Protective & Regulatory Servs., 962 S.W.2d 253, 257 (Tex.App.-Waco 1998, no pet.)). "This could occur if: `(1) the evidence is factually insufficient to support a finding by clear and convincing evidence; or (2) a finding is so contrary to the weight of contradicting evidence that no trier of fact could reasonably find the evidence to be clear and convincing.'" Id.

ANALYSIS
The parties do not dispute that Donna Thurman's home was not a safe environment for M.E.C. The heart of Castillo's first issue is whether Dollie and he lived with M.E.C. in this unsafe environment and/or left M.E.C. there in Donna's care.
The following evidence tends to support the jury's finding on this issue:
 Castillo testified that Dollie M.E.C., and he lived in Donna's home for about a week after M.E.C.'s birth;
 when Castillo testified about M.E.C.'s removal, he referred to Donna's home as "our house";
 Donna informed CPS workers at the time of M.E.C.'s removal that they lived in her home and that Castillo and Dollie had left M.E.C. in her care when they moved to Austin;
 though Castillo told CPS caseworkers that they lived in a friend's apartment on Garden Drive at the time of removal, the manager of the apartment complex said they did not;
 a neighbor testified that Castillo, Dollie, and M.E.C. lived in Donna's home for several months and that they were living there at the time of removal;
 a babysitter who has known Donna for many years and Dollie for several years testified that she sat M.E.C. about six times to help Donna and that M.E.C. was living with Donna on each of those occasions;
 the sitter recalled that Dollie was living in Donna's home on "some" of these occasions and that Castillo spent the night there sometimes; and
 the sitter testified that Castillo and Dollie left M.E.C. in Donna's care for *455 about a week when they moved to Austin.
This constitutes more than a scintilla of evidence to support the jury's finding. Accordingly, we reject Castillo's no-evidence claim. See Burroughs Wellcome Co., 907 S.W.2d at 499; A.P., 42 S.W.3d at 256.
The following evidence tends to contradict the jury's finding:
 Castillo denied that Dollie and he left M.E.C. in Donna's care at any time;
 he testified that they moved out of Donna's home one week after M.E.C.'s birth and into his brother's apartment in Austin;
 Castillo's brother testified that they lived with him in his Austin apartment;
 Castillo testified that Dollie and M.E.C. were living in a friend's apartment and that he was living in another friend's apartment at the time of removal;
 Castillo and Dollie told CPS workers that they did not live in Donna's home when CPS came to investigate the referral;
 the neighbor's testimony regarding the length of time Castillo, Dollie, and M.E.C. lived with Donna varied between Dollie's trial and Castillo's trial; and
 the sitter could not affirmatively state that Castillo ever lived in Donna's home.
Castillo contends that this evidence is more believable than the evidence favorable to the verdict because:
 Castillo provided somewhat more detailed testimony than other witnesses about where they lived and how he cared for M.E.C. when she was with him;
 Donna has unspecified mental problems and is an alcoholic, which tends to discredit her statement to CPS workers that Castillo, Dollie, and M.E.C. were living with her at the time of removal;
 the neighbor's testimony varied between trials and was non-specific regarding when Castillo, Dollie, and M.E.C. lived in Donna's home; and
 the sitter's testimony was non-specific regarding when Castillo and Dollie left M.E.C. in Donna's care.
Castillo's factual sufficiency challenge revolves primarily around credibility issues. We must defer to the jury's resolution of such issues. See In re D.G., 5 S.W.3d 769, 771 (Tex.App.-San Antonio 1999, no pet.); In re A.M.C., 2 S.W.3d 707, 717 (Tex.App.-Waco 1999, no pet.); see also Maritime Overseas Corp., 971 S.W.2d at 407; Checker Bag Co. v. Washington, 27 S.W.3d 625, 633 (Tex.App.-Waco 2000, pet. ref'd). After reviewing all the evidence, we cannot say that the jury's affirmative finding on the first ground for termination is "so contrary to the weight of contradicting evidence that no trier of fact could reasonably find the evidence to be clear and convincing." A.P., 42 S.W.3d at 256 (quoting Spangler, 962 S.W.2d at 257). Thus, the finding is supported by factually sufficient evidence.
For these reasons, we conclude that Castillo's first issue is without merit.

TEMPORARY ORDERS
Castillo argues in his third issue that the court improperly commented on the weight of the evidence by admitting copies of the temporary orders issued by the court following the April 1999 status hearing and the August 1999 and January 2000 permanency hearings. However, Castillo offered these exhibits in evidence, ostensibly to show that they were not written *456 in Spanish.[5] Because he offered the exhibits in evidence, he cannot now complain that their admission was error. See Neasbitt v. Warren, 22 S.W.3d 107, 112 (Tex.App.-Fort Worth 2000, no pet.); Texas Indus., Inc. v. Vaughan, 919 S.W.2d 798, 804 (Tex.App.-Houston [14th Dist.] 1996, writ denied); Bell v. Showa Denko K.K., 899 S.W.2d 749, 760 (Tex.App.-Amarillo 1995, writ denied); see also Tex. R.App. P. 33.1(a)(1); Tex.R. Evid. 103(a)(1). Thus, his third issue is without merit.

DOLLIE'S JURY CHARGE
Castillo claims in his fourth issue that the court improperly commented on the weight of the evidence by admitting a copy of the jury charge from Dollie's trial. CPS responds that Castillo failed to properly preserve this complaint and that the judge's signature on the last page of the charge does not constitute a comment on the evidence.
The attorney ad litem offered the jury charge from Dollie's trial in evidence to establish that Dollie's parental rights had been terminated. The ad litem contended over Castillo's objections that Dollie's status was particularly relevant because other evidence showed that Castillo and Dollie had continued to cohabit shortly before his trial. Castillo objected that the exhibit:
(1) is irrelevant; (2) lists the names of the jurors from Dollie's trial and, if any of Castillo's jurors knew any of Dollie's, "that might influence them one way or the other"; (3) is cumulative; and (4) is prejudicial.
Castillo relies heavily on the recent decision of the First Court of Appeals in In re T.T. 39 S.W.3d 355 (Tex.App.-Houston [1st Dist.] 2001, no pet. h.). In this decision, the First Court held that it is improper for a trial court to admit in evidence a temporary order issued under section 262.201(c) of the Family Code which recites the findings required by subsection (b) of that statute to permit continued CPS custody.[6]Id. at 358-59; see also Tex. Fam.Code. Ann. § 262.201(b), (c) (Vernon Supp.2002).
The court found that admission of the temporary order was improper because: (1) "[t]he effect of admitting the judge's written statements in the order was the same as if the judge had violated Rule [of Evidence] 605 by testifying to those statements"; and (2) it was a comment on the weight of the evidence. T.T., 39 S.W.3d at 359. We now determine whether the admission of the charge from Dollie's trial runs afoul of either concern.

*457 RULE 605
Rule of Evidence 605 establishes an absolute prohibition against a judge testifying as a witness in a trial over which he presides. See Tex.R. Evid. 605; Bradley v. State ex rel. White, 990 S.W.2d 245, 248 (Tex.1999); T.T., 39 S.W.3d at 358-59. So strong is this prohibition that "[n]o objection need be made in order to preserve this point." Tex.R. Evid. 605; accord Bradley, 990 S.W.2d at 248; T.T., 39 S.W.3d at 359.
The Court of Criminal Appeals[7] has construed Rule 605 to prohibit not only direct testimony by the judge but also that which "is the functional equivalent of witness testimony." Hammond v. State, 799 S.W.2d 741, 746 (Tex.Crim.App.1990) (quoting 27 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6063, at 353 (1990)); see also 1 Steven Goode et al., Texas Practice: Guide to the Texas Rules of Evidence: Civil and Criminal § 605.1, at 531 (2d ed. 1993) ("Remarks or questions from the bench which convey factual information not in evidence run afoul of the rule.").
The jury charge from Dollie's trial informed the jury in Castillo's case that another jury had found by clear and convincing evidence that: (1) Dollie had knowingly placed or knowingly allowed M.E.C. to remain in conditions or surroundings which endangered her physical or emotional well-being; (2) that she had failed to comply with the court's temporary orders which specified the actions necessary for M.E.C. to return to her custody; (3) that termination of her parental rights was in M.E.C.'s best interest; and (4) that her parental rights should be terminated. The judge signed the charge in Dollie's case as required by Rules of Civil Procedure 226a and 272 and by order of the Supreme Court. See Tex.R. Civ. P. 226a, 272; Order Adopting Rules of Civil Procedure, 661-662 S.W.2d (Tex. Cases) lxxiii (Tex. 1983).[8]
Castillo contends that the judge's signature informed the jury in his case that the judge had "approved" the jury's verdict in Dollie's case. We disagree. "Unless expressly waived by the parties," a trial court "shall" submit a written, signed charge to the jury which contains instructions, definitions, and questions which "enable the jury to render a verdict." Tex.R. Civ. P. 271-279. Pursuant to Rules 226a *458 and 272 and in accordance with the form jury instructions adopted by the Supreme Court, the judge signed the charge in Dollie's case before he submitted it to the jury for deliberation. See Tex.R. Civ. P. 226a, 272; Order Adopting Rules of Civil Procedure, 661-662 S.W.2d (Tex. Cases) lxxiii (Tex.1983). His pre-verdict signature cannot in any wise be construed as an approval of that jury's verdict. Rather, his signature served to formalize the fact that the judge was providing the jurors in Dollie's case with instructions which they had to "carefully and strictly follow during [their] deliberations." The import of the judge's signature was no doubt reinforced for the jurors in Castillo's case when they retired for deliberations with the signed charge which guided their deliberations in his case.
The trial judge's signature on the jury charge from Dollie's trial did not constitute "testimony" or "convey factual information not in evidence." See Tex.R. Evid. 605; Goode supra § 605.1, at 531. For the reasons stated, we likewise conclude that the judge's signature on Dollie's charge did not constitute "the functional equivalent of witness testimony." See Hammond, 799 S.W.2d at 746. Accordingly, the admission of the charge from Dollie's trial did not violate Rule 605.

COMMENT ON EVIDENCE
Public policy demands that a judge who tries a case act with absolute impartiality. It further demands that a judge appear to be impartial so that no doubts or suspicions exist as to the fairness or the integrity of the court. Judicial decisions rendered under circumstances that suggest bias, prejudice or favoritism undermine the integrity of the courts, breed skepticism and mistrust, and thwart the principles on which the judicial system is based.
Metzger v. Sebek, 892 S.W.2d 20, 38 (Tex. App.-Houston [1st Dist.] 1994, writ denied) (quoting CNA Ins. Co. v. Scheffey, 828 S.W.2d 785, 792 (Tex.App.-Texarkana 1992, writ denied)); accord Hoggett v. Brown, 971 S.W.2d 472, 495 (Tex.App.-Houston [14th Dist.] 1997, pet. denied); Capellen v. Capellen, 888 S.W.2d 539, 547 (Tex.App.-El Paso 1994, writ denied). Nevertheless, a trial court has significant discretion in expressing itself while exercising control over the conduct of the trial. See Dow Chem. Co. v. Francis, 46 S.W.3d 237, 240-41 (Tex.2001); Hoggett, 971 S.W.2d at 495; Metzger, 892 S.W.2d at 38; Capellen, 888 S.W.2d at 547.
The prohibition against commenting on the evidence has its primary application in the context of the jury charge. Rule of Civil Procedure 277 provides that "[t]he court shall not in its charge comment directly on the weight of the evidence." Tex.R. Civ. P. 277. Although Rule 277 concerns the court's charge, appellate courts have applied the principle expressed therein to a court's verbal statements. See, e.g., Knoll v. Neblett, 966 S.W.2d 622, 640-41 (Tex.App.-Houston [14th Dist.] 1998, pet. denied); Waldon v. City of Longview, 855 S.W.2d 875, 879 (Tex. App.-Tyler 1993, no writ); Pitt v. Bradford Farms, 843 S.W.2d 705, 706-07 (Tex. App.-Corpus Christi 1992, no writ); In re Guardianship of Dahl, 590 S.W.2d 191, 195-96 (Tex.Civ.App.-Amarillo 1979, writ ref'd n.r.e.); see also 4 Roy W. McDonald, Texas Civil Practice § 21:39 (1992).
A trial judge's statement during the course of trial impermissibly comments on the weight of the evidence if "it indicates the judge's opinion concerning a matter to be determined by the jury." Knoll, 966 S.W.2d at 640; accord Dahl, 590 S.W.2d at 196; see also H.E. Butt Grocery Co. v. Bilotto, 985 S.W.2d 22, 24 (Tex. 1998); Whiteside v. Watson, 12 S.W.3d *459 614, 624 (Tex.App.-Eastland 2000, pet. granted w.r.m.).
Generally, a complaint that a trial judge has made improper comments must be properly preserved for appellate review. See Dow Chem. Co., 46 S.W.3d at 241; Capellen, 888 S.W.2d at 546-47; MortgageAmerica Corp. v. American Nat'l Bank, 651 S.W.2d 851, 858 (Tex.App.-Austin 1983, writ ref'd n.r.e.); see also Tex.R.App. P. 33.1(a); Tex.R. Evid. 103(a)(1). Preservation is unnecessary only if the "comment cannot be rendered harmless by proper instruction." Dow Chem. Co., 46 S.W.3d at 241; accord Capellen, 888 S.W.2d at 547; MortgageAmerica Corp., 651 S.W.2d at 858.
Assuming without deciding that Castillo's objection that the admission of Dollie's jury charge was "prejudicial" sufficed to preserve this issue for our review, we nevertheless conclude for the reasons stated in connection with our Rule 605 analysis that the admission of the charge from Dollie's trial did not "indicate[] the judge's opinion concerning a matter to be determined by the jury." Knoll, 966 S.W.2d at 640 (emphasis added); accord Dahl, 590 S.W.2d at 196; see also H.E. Butt Grocery Co., 985 S.W.2d at 24; Whiteside, 12 S.W.3d at 624. Accordingly, we hold that the admission of the charge from Dollie's trial did not constitute a comment on the evidence by the judge.[9]
For these reasons, we conclude that Castillo's fourth issue is without merit.

REMAINING ISSUES
Castillo's remaining issues concern the jury's finding that his parental rights should be terminated because he failed to comply with the court's temporary orders and the propriety of basing a termination decree on such a finding. In light of our disposition of Castillo's first, third and fourth issues, we need not address these remaining issues.
We affirm the judgment.
NOTES
[1] The record contains conflicting testimony regarding whether Castillo and Dollie took M.E.C. to Austin with them or left her in Donna's care.
[2] CPS filed a motion in January 2000 for an extension of the one-year dismissal date mandated by statute. See Tex. Fam.Code. Ann. § 263.401(a) (Vernon Supp.2002). The court extended the dismissal date to August 26, 2000.
[3] Consistent with our holding in a recent decision, the court submitted each ground for termination to the jury in a separate question. See In re B.L.D., 56 S.W.3d 203, 218-19 (Tex. App.-Waco 2001, no pet. h.). Eleven jurors concurred in the affirmative finding on the first ground for termination. Ten jurors concurred in the refusal to make an affirmative finding on the second ground. The jurors were unanimous in their refusal to make an affirmative finding on the third ground and in their affirmative finding on the fourth ground. Ten jurors concurred in finding that termination is in M.E.C.'s best interest. The same jurors who concurred in the best-interest finding also concurred in the affirmative finding on the first ground for termination.
[4] Texas courts are divided on whether a heightened standard of review is required. Compare In re W.C., No. 14-00-1280-CV, slip op. at 6-7, 2001 Tex.App. LEXIS 6165, at *11-12, 2000 WL 1677972 (Tex.App.-Houston [14th Dist.] Sept. 6, 2001, no pet. h.); In re H.N.P., No. 09-99-564 CV, 2000 Tex.App. LEXIS 7644, at *2-3, 2000 WL 1677972 (Tex. App.-Beaumont 2000, no pet.) (not designated for publication); In re C.H., 25 S.W.3d 38, 47-48 (Tex.App.-El Paso 2000, pet. granted); M.H.D. v. Texas Dep't of Protective & Regulatory Servs., No. 13-97-281-CV, 1998 Tex.App. LEXIS 6159, at *5 (Tex.App.-Corpus Christi 1998, pet. denied); Spangler v. Texas Dep't of Protective & Regulatory Servs., 962 S.W.2d 253, 257 (Tex.App.-Waco 1998, no pet.); In re H.C., 942 S.W.2d 661, 663-64 (Tex.App.-San Antonio 1997, no writ); Williams v. Texas Dep't of Human Servs., 788 S.W.2d 922, 926 (Tex.App.-Houston [1st Dist.] 1990, no writ); In re L.R.M., 763 S.W.2d 64, 66-67 (Tex. App.-Fort Worth 1989, no writ); Neiswander v. Bailey, 645 S.W.2d 835, 835-36 (Tex.App.-Dallas 1982, no writ) (each applying heightened standard); with Leal v. Texas Dep't of Protective & Regulatory Servs., 25 S.W.3d 315, 320-21 (Tex.App.-Austin 2000, no pet.); In re J.J., 911 S.W.2d 437, 439-40 & n. 1 (Tex. App.-Texarkana 1995, writ denied); In re R.D.S., 902 S.W.2d 714, 716 (Tex.App.-Amarillo 1995, no writ); In re J.F., 888 S.W.2d 140, 141 (Tex.App.-Tyler 1994, no writ) (each declining to apply heightened standard). The Supreme Court has granted a petition for review to settle the issue. See In re C.H., No. 00-552, 44 Tex. Sup.Ct. J. 433 (Feb. 15, 2001).
[5] Castillo defended against CPS's allegation that he failed to comply with the court's orders by producing evidence that he was never provided copies of the orders and that the orders were written in a language he could not understand. However, he did not seek to admit the orders for a limited purpose. See Tex.R. Evid. 105(b).
[6] To permit continued CPS custody after the initial adversary hearing following removal, a court must find "sufficient evidence to satisfy a person of ordinary prudence and caution that:

(1) there was a danger to the physical health or safety of the child which was caused by an act or failure to act of the person entitled to possession and for the child to remain in the home is contrary to the welfare of the child;
(2) the urgent need for protection required the immediate removal of the child and reasonable efforts consistent with the circumstances and providing for the safety of the child, were made to eliminate or prevent the child's removal; and
(3) reasonable efforts have been made to enable the child to return home, but there is a substantial risk of a continuing danger if the child is returned home."
Tex. Fam.Code. Ann. § 262.201(b) (Vernon Supp.2002).
[7] The Supreme Court has relied on Court of Criminal Appeals case law in interpreting Rule 605 for civil cases. See, e.g., Bradley v. State ex rel. White, 990 S.W.2d 245, 248 (Tex. 1999) (citing Hensarling v. State, 829 S.W.2d 168, 170 (Tex.Crim.App.1992)). We do likewise.
[8] Rule of Civil Procedure 226a provides in pertinent part that a "court shall give such admonitory instructions to the jury panel and to the jury as may be prescribed by the Supreme Court." Tex.R. Civ. P. 226a. Pursuant to this authority, the Court adopted a set of jury instructions in 1966 which took effect on January 1, 1967. See Order of the Supreme Court, 401-402 S.W.2d (Tex. Cases) xxxvii-xlii (Tex.1966, amended 1971). The Court has amended the instructions on three occasions. The 1971 amendment altered instruction number 9 in section II, which contains the oral and written instructions the court must provide "immediately after the jurors are selected." See Order of the Supreme Court, 401-402 S.W.2d (Tex. Cases) xxxviii (Tex.1966), amended by Order of July 21, 1970 Adopting Amendment, 455-456 S.W.2d (Tex. Cases) xxxi (Tex.1971). Section III of these instructions provide the "admonitory instructions" to be submitted in the jury charge. See Order of the Supreme Court, 401-402 S.W.2d (Tex. Cases) xl-xli (Tex.1966, amended 1972). The Court has amended instruction number 6 and appurtenant instructions in section III twice. See Order, 483-484 S.W.2d (Tex. Cases) lv-lvi (Tex.1972), amended by Order Adopting Rules of Civil Procedure, 661-662 S.W.2d (Tex. Cases) lxxiii-lxxiv (Tex.1983).
[9] We hasten to add, however, that generally "a judgment, verdict or decree is not admissible to prove a contested issue in another proceeding or to establish the facts on which the judgment, verdict or decree was rendered." John Deere Co. v. May, 773 S.W.2d 369, 374 (Tex.App.-Waco 1989, writ denied); see also Silva v. Enz, 853 S.W.2d 815, 818 (Tex.App.-Corpus Christi 1993, writ denied); Davis v. Zapata Petroleum Corp., 351 S.W.2d 916, 922 (Tex.Civ.App.-El Paso 1961, writ ref'd n.r.e.). Castillo does not challenge the admission of the charge and verdict on this basis however.